UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                           )
                                           )
ALVIN J. COLEMAN & SON, INC. and           )
COLEMAN CONCRETE, INC.,                    )
    Plaintiffs,                            )
                                           )
v.                                         )     **CIVIL ACTION**
                                           )     **NO. 12-cv-40068-TSH**
FRANCIS HARVEY & SONS, INC. and            )
JOHN HARVEY,                               )
                                           )
    Defendants,                            )
                                           )
    and                                    )
                                           )
DIMEO CONSTRUCTION COMPANY, LEE            )
KENNEDY CO., INC., RAGNAR BENSON           )
CONSTRUCTION, LLC, NEW ENERGY              )
ALLIANCE, LLC, GILBANE BUILDING            )
COMPANY, SKANSKA (U.S.A.) INC.,            )
J.H. MAXYMILLIAN, INC., GUARANTY           )
MANAGEMENT COMPANY, INC., TURNER           )
CONSTRUCTION COMPANY, DANIEL               )
O'CONNELL'S SONS, INC., THE                )
WHITING-TURNER CONTRACTING                 )
COMPANY, and CONSIGLI CONSTRUCTION         )
CO., INC.,                                 )
                                           )
    Reach and Apply Defendants.            )
_____)


# ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**August 7, 2012**

**Hillman, D.J.**

    This matter comes before the Court on the Plaintiffs' Motion for Preliminary Injunction

against Reach and Apply Defendants (Docket No. 2) under Fed. R. Civ. P. 65.  The Court heard

argument on Plaintiffs' motion on July 31, 2012. Counsel for all parties, including the Reach and Apply Defendants, were present at the hearing.

## Facts[1]

Plaintiffs claim Defendants Francis Harvey & Sons, Inc. ("Francis Harvey") and John Harvey, owe them at least $2,650,000.00 stemming from a construction project in Berlin, New Hampshire (Berlin Project). The general contractor of the Berlin Project, Babcock & Wilcox Construction Co., Inc. (B&W), hired Francis Harvey as a subcontractor and Plaintiffs were secondary subcontractors. When Defendants failed to make payment to Plaintiffs, the two parties executed a promissory note, the balance of which is at least $2,650,000.

Plaintiffs are small family owned businesses employing 250 people in New Hampshire. Without payment from Defendants, Plaintiffs have drawn on their line of credit in order to keep operations running on other projects. Plaintiffs contend this financial situation is unsustainable and that there are multiple liens and judgments against Defendants, and monies currently in the hands of the Reach and Apply Defendants that may soon be paid to Defendants. In an attempt to maintain the survival of their businesses and to prevent Defendants from accessing funds from the Reach and Apply Defendants, they seek to enjoin the Reach and Apply Defendants "from transferring, assigning, encumbering, or paying any monies up to $2,650,000.00 to Harvey as a result of any obligations now due or which may become due by the Reach and Apply Defendants and to hold said sums in safekeeping to be available for the satisfaction of any judgment entered in favor of the Coleman Companies in this action." Doc. 2, ¶ 4.[2]

---

[1] Unless otherwise indicated, facts are taken from Plaintiffs' Complaint (Doc. 1) or the Coleman Affidavit in Support of the Motion for Preliminary Injunction (Doc. 2-2).

[2] Due to the numerous docket entries already recorded in this case, the Court will refer to supporting documents by their document numbers in the docket ("Doc.").

Plaintiffs have also been busy in other courts seeking redress from Francis Harvey.[3] In three different New Hampshire state courts, Plaintiffs have acquired security in the form of a lien bond in the full amount of their collective claim for $2,555,136.22, and an attachment of $1,900,000.00. Plaintiffs allege that this security may be worthless because the bond may not be collectable as they believe the Berlin Project general contractor B&W has already paid Francis Harvey, and because they do not know the true value of the attachment. Defendants are also parties to at least three other cases pending in federal court in Boston, two of which name several of the same reach and apply defendants as in the instant suit. The Worcester Superior Court has issued a preliminary injunction enjoining Reach and Apply Defendant Whiting-Turner from paying Francis Harvey monies up to $118,420.00. Doc. 147-1. Moreover, it appears the Internal Revenue Service has levied $4,243,669.52 on Francis Harvey's property and assets. Doc. 144-2.[4] Commerce Bank and Trust Co. has perfected a prior security interest in Francis Harvey's business assets, property, and accounts up to an amount of $5,972,183.46. Doc. 121-1.

Reach and Apply Defendants are named in this suit because they contracted with Defendants on construction projects across several states. The Reach and Apply Defendants claim they do not owe Defendants any money at this time, any money or debts owed to Defendants are offset completely, or any money owed to Defendants in the future are subject to contractual terms. For example, Reach and Apply Defendant Consigli Construction Co. (Consigli) has three open subcontracts with Francis Harvey with a projected deficit. Doc. 162, ¶ 5. Under the subcontracts there are multiple conditions precedent before Francis Harvey is paid, such as allowing for setoffs (Doc. 162-1), and Francis Harvey is subject to multiple liens and

---

[3] "Federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir. 1990).

[4] The levy requires Whiting-Turner to turn over any credits due Harvey to the IRS. Doc. 144-2.

bond claims from subcontractors, venders, and union benefit fund trustees relating to those contracts. *Id*., ¶ 3. Reach and Apply Defendant Guaranty Management Co. (Guaranty) likewise has potential setoff costs far beyond what it owes Francis Harvey because Harvey failed to pay multiple subcontractors, vendors, and union benefit fund trustees on their subcontracts. Doc. 158, ¶¶ 3, 4. Liberty Mutual Insurance Co. (Liberty), as surety and Francis Harvey as principal, issued a performance bond and labor and material bond for the benefit of Guaranty. Doc. 158-3. Including setoffs, Guaranty has demanded at least $124,941.28 from Liberty. *Id*. Gilbane reports its exposure on thirteen (13) subcontracts with Francis Harvey to be at least $1,199,579. Doc. 137, ¶ 8. Lee Kennedy faces exposure in excess of $411,231.75. Doc. 139, ¶ 8. Reach and Apply Defendant Daniel O'Connell's Sons (O'Connell) has been told by the Massachusetts Carpenter Labor Union and the Massachusetts Laborers Union that they would no longer work with Francis Harvey. Doc. 154, ¶ 7. O'Connell agreed to pay the unions directly and deduct the costs from Francis Harvey's subcontract. *Id*., ¶8.

**Analysis**

Plaintiffs have moved for a preliminary injunction, the effect of which would be to freeze *pendent lite* funds, that may now be, or more fittingly, that *may* at some unknown point in the future be in the hands of the Reach and Apply Defendants and due to Defendants. This request can be redressed by this Court. Fed. R. Civ. P. 64(a); Mass. Gen. Laws. ch. 214, § 3(6). Normally, to grant a plaintiff relief against reach and apply defendants, a court must determine "(1) the indebtedness of the defendant and (2) [if] the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt." *Hunter v. Youthstream Media Networks, Inc.,* 241 F. Supp. 2d 52, 57 (D. Mass. 2002). The first step is an action in common law,

establishing that the defendant owes the plaintiff a debt.  *Stockbridge v. Mixer*, 215 Mass. 415, 417-18 (1913).  The second step is to collect the debt and sounds in equity.  *Id.*

In cases like here, where Plaintiffs claim an equitable interest against Defendants, there is some question whether federal courts possess general equitable powers to issue prejudgment injunctions in the nature of freeze orders so as to ensure the adequacy of postjudgment remedies. *See United States v. First Nat'l City Bank*, 379 U.S. 378, 385, 85 S.Ct. 528 (1965); *DeBeers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130 (1945).  *Cf. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 119 S.Ct. 1961 (1999) (finding that federal courts ordinarily lack the equitable authority to issue prejudgment attachments in actions solely at law).

Assuming a prejudgment freeze order is an available remedy, Plaintiffs must show:  (1) a likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of hardships in their favor; and (4) the effect (if any) of the court's ruling on the public interest.  *Ross-Simons I of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996).  The four part test is an appropriate framework for freezing prejudgment assets. *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 159 (1st Cir. 2004).  Assuming *arguendo* that Plaintiffs can satisfy the first prong of this standard, they fall measurably short at the others.

To establish irreparable harm, Plaintiffs argue their businesses might not survive without the monies owed by Defendants.  Plaintiffs claim they need an injunction *just in case* the attachments and lien bonds in New Hampshire, and the eventual judgment in this Court, are worth little or nothing when Plaintiffs seek to collect on them.  "Irreparable harm most often exists where a party has no adequate remedy at law," *Charlesbank,* 370 F.3d at 162; and, is

5

absent when such a remedy as money will make the plaintiff whole. *Id*. "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Id. (*quoting *In re Rare Coin Galleries of America v. Vinick & Young,* 862 F.2d 896, 902 (1st Cir. 1988)).

Plaintiffs argue that denial of their request for injunctive relief will result in the *possibility* that Plaintiffs will be unable to satisfy any judgment they may obtain against Defendants in Massachusetts. Doc. 3.[5] That statement can be made by virtually every plaintiff suing another for money damages. It is settled that such an inherently speculative claim of harm cannot justify the issuance of a prejudgment injunction of this nature. *See, e.g., Charlesbank*, 370 F.3d at 162-63; *Rare Coin,* 862 F.2d at 902; *Sierra Club v. Larson*, 769 F. Supp. 420, 422 (D. Mass 1991); *Public Serv. Co. of N.H. v. Town of W. Newbury,* 835 F.2d 380, 383 (1st Cir. 1987); *see also Ross–Simons I,* 102 F.3d at 19 (explaining that a "tenuous or overly speculative forecast of anticipated harm" does not possess the substance required to show irreparable injury). If and when Plaintiffs prevail on the merits of their claim, they can execute upon the judgment entered against Defendants. Unless and until that happens, Plaintiffs must identify some *independent* reason why they will be irreparably harmed without the imposition of interim relief. *Charlesbank*, 370 F.3d at 163.

Notwithstanding same, Plaintiffs are far back in the line of secured creditors of Francis Harvey (e.g., the IRS and Commerce Bank together have liens totaling more than $10 million). Because there appears a strong likelihood that Defendants will have difficulty paying any judgment obtained by Plaintiffs, Plaintiffs have – by the slimmest of margins – articulated a legitimate argument that they will suffer irreparable harm. Once the movant sets forth its

---

[5] To the extent that Plaintiffs' security of more than $4 million may be diminished, it is possible that Plaintiffs' own delay in enforcing payment may be to blame. Doc. 2-2, ¶¶ 43, 44.

6

argument for irreparable harm, the next factor is what the First Circuit terms the "balance of relevant impositions" as an assessment of "the hardship to the nonmovant if enjoined as contrasted to the hardship to the movant if no injunction is granted." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006).

Plaintiffs seek to alter or divert the flow of funds on multiple projects involving the twelve Reach and Apply Defendants in order to shift their own risk of business onto the Reach and Apply Defendants. From filings and representations at the hearing,[6] the Reach and Apply Defendants have rights against Defendants under the terms of their respective contracts or under law which allow them to setoff costs and damages against any payments due to Defendants. If it were to enter, the preliminary injunction would impinge the Reach Apply Defendants' rights for the sole benefit of Plaintiffs. The balance of harms weighs against such a result. Notwithstanding the potential irreparable harm to the Reach and Apply Defendants, if the preliminary injunction were to be granted, Defendants' subcontractors working on any of the Reach and Apply Defendant's projects would not be further compensated for their labor and materials. The subcontractors would then place liens or attachments on the Reach and Apply Defendants' property or stop working on projects; or, the Reach and Apply Defendants would be forced to pay from their own funds to complete the work.

Moreover, as is stated above, the amounts owed -- if any -- by Reach and Apply Defendants are undetermined. If Reach and Apply Defendants currently owe money to Defendants, it is not due to them until the Reach and Apply Defendants setoff their costs. *City Rentals, LLC v. Petruzzi Bros., Inc.*, ESCV 2004 -1603, 2009 WL 5909270 (Mass. Super. Oct. 6, 2009) *aff'd sub nom* 78 Mass. App. Ct. 1119 (2011) (affirming reach and apply defendant use of

---

[6] It is appropriate for the Court to consider concessions made by counsel on the record. *Correllas v. Viveiros*, 410 Mass. 314, 317-18 & n. 3 (1991) (and cases cited therein).

setoff defense was appropriate when not alleged as an affirmative defense). There are at least four additional lawsuits now pending against Defendants in Massachusetts. Regardless of whether funds are due to any of those plaintiffs, it would be inequitable for this Court to give these Plaintiffs the relief they seek where it would compromise the rights of the other plaintiffs. In essence, the injunction would elevate Plaintiffs' interests and would create confusion for the equitable trustees.

These diverse interests across multiple cases, proceeding in different courts without any apparent coordination, subject the Reach and Apply Defendants to competing injunctions, liens, and/or attachments which creates confusion, duplication, and further Court intervention as the parties are faced with sorting out their legal obligations. In addition, the IRS levy for $4,243,669.52 suggests that the granting of the preliminary injunction could have the potential to raise liability issues for Reach and Apply Defendants under federal law.[7] Even if this Court were to craft a very narrowly tailored injunction, it would simply be unworkable and undeserved.

In light of the $4,455,136.22 in security in place for Plaintiffs' claims in New Hampshire, the potentially untenable position of Reach and Apply Defendants if they were enjoined as requested, and the secured interests of the IRS and Commerce Bank, the balance of harms favors denial of injunctive relief and weighs against Plaintiffs.

For good measure, an analysis of the fourth prong also supports denial of the preliminary injunction. Under this prong, this Court must examine whether the injunction would affect public interest beyond the private interest of the litigants. *United States v. Zenon,* 711 F.2d 476 (1st Cir. 1983). The public interest is best served if these funds are freely available to be used to pay for materials and labor on projects completed in Massachusetts. There is a strong public

---

[7] The IRS levy may be superior to the Plaintiffs' claim as the IRS has priority lien over reach and apply judgment if the "IRS [made] a proper filing of the lien under [title 26 Internal Revenue Code] section 6323(f)." *Trustees v. Baldwin Steel Co., Inc.,* 2001 WL 1555539 (D. Mass. Aug. 13, 2001).

8

interest in having Massachusetts construction projects, general contractors, and subcontractors use funds to pay for labor and material performed in the Commonwealth.  An injunction may lead to the filing of even more lawsuits between Reach and Apply Defendants and the contractors and vendors who supply labor, materials, equipment and services on Defendants' projects.  Reach and Apply Defendants should be allowed to maintain their reputations as general contractors who administer projects properly.

Ultimately, "a preliminary injunction is a potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests," *Charlesbank*, 370 F. 3d at 163, and no such circumstances exist here.  Plaintiffs' motion for a preliminary injunction is therefore **DENIED**.

/s/ Timothy S. Hillman_____
TIMOTHY S. HILLMAN
U.S. DISTRICT JUDGE